1

2

3

4

5

6

7

8

9       UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA

10  STEPHANIE N. McDONOUGH,)
    individually and as the personal)        CV 03-8861 FMC (RZx)
11  representative of James Hanlon)
    McDonough Daniels, deceased,   )          [consolidated with
12                                  )          CV 04-2538 FMC (JWJx)]
                                    )
13              Plaintiffs,         )
                                    )          ORDER DENYING MOTION FOR
14  vs.                             )          SUMMARY JUDGMENT.
                                    )
15  County of Ventura, et al.,      )
                                    )          THIS CONSTITUTES NOTICE OF ENTRY
16              Defendants.         )          AS REQUIRED BY FRCP, RULE 77(d)
                                    )
17  _____ )

18      This matter is before the Court on Defendants' Motion for Summary

19  Judgment (docket # 22).  The Court has read and considered the moving,

20  opposition, and reply documents submitted in connection with this Motion.

21      The Court deems this matter appropriate for decision without oral

22  argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing

23  set for February 28, 2005, is removed from the Court's calendar.  For the

24  reasons set forth below, the Court DENIES Defendants' Motion.

25                          **I. Background**

26      On April 8, 2003, Ventura County sheriff's deputies responded to a 911

27  call reporting that a man seated outside a Thousand Oaks pizza restaurant

28  was cutting into his wrist and forearm with a knife.  Prior to the deputies'

    arrival, the man, later identified as 19-year-old James Daniels ("Daniels"),

1   fled the scene.  Ventura County Sheriff's Senior Deputy Vincent Camou

2   ("Camou") was one of the first responders to the scene.  Camou met with a

3   citizen who had witnessed the reported act, obtained additional information,

4   and informed other deputies of Daniels' possible whereabouts.

5        Deputies searched on foot and in their vehicles for Daniels.  When he

6   was spotted, a foot pursuit ensued and Daniels scaled walls and made his way

7   through heavy brush and terrain in an apparent attempt to evade deputies.

8   After one of the deputies recognized Daniels, deputies began calling Daniels

9   by his first name, in an attempt to gain his compliance and have him put

10  down the knife.

11       At one point during the pursuit, Deputy Jason Fuller caught hold of

12  Daniels' jacket but Daniels removed it, thus evading Fuller, and continued

13  carving into his arm with the knife.  Fuller attempted to subdue Daniels by

14  the use of pepper spray, but the spray had no apparent effect on Daniels.

15  Daniels was able to evade Fuller and continue running away from deputies.

16       After a lengthy pursuit, Daniels approached a public swimming pool

17  where children were seen and heard playing.  Senior Deputy Todd Welty

18  fired two "less lethal" beanbag rounds at Daniels in an attempt to stop him.

19  It is unknown whether the beanbags struck Daniels but he continued

20  running as if he had not been hit.  Deputy Camou then fired several live

21  ammunition rounds at Daniels.  Initially, Camou believed he had missed,

22  because Daniels continued to move without stopping or dropping the knife.

23  When Camou fired a second volley at Daniels, he fell.  Plaintiffs note that the

24  closest witness to the shooting testified that seconds before the first volley of

25  shots was fired, she observed Daniels move away from the front entrance of

26

27

28

1  the pool.[1]  Pls' opp., at p. 11 (citing Deposition of Angela Bambrough, p. 36,

2  ¶ 24-25; p. 37, ¶ 1-10; p. 41, ¶ 1-6).  Plaintiffs note further that Deputy Roger

3  Kelly, who was near Deputy Camou at the time of the shooting, did not have

4  his weapon drawn.  *Id.* at p. 19 (citing Deposition of Roger Kelly, Complaint,

5  Ex. 3, p. 83, ¶ 1-3).  Daniels had been struck by eight bullets and was

6  pronounced dead at the scene by paramedics.

7  <center>**II. The Present Action**</center>

8       On December 5, 2003, Plaintiff Donald Daniels (Daniels' father)

9  brought this action against the defendants, alleging the excessive use of force

10  by Camou in shooting his son to death, in violation of 42 U.S.C. § 1983.

11  Complaint, at p. 11.  Daniels also asserted a Section 1983 claim against the

12  County of Ventura and the Ventura County Sheriff's Department on grounds

13  that insufficient training with regard to mentally ill persons and failure to

14  discipline and monitor cases involving excessive use of force constituted a

15  custom or practice of discrimination against individuals like the decedent.[2]

16  *Id.* at 17-26.  Daniels also asserted that all Defendants violated the decedent's

17  Fourteenth Amendment right to due process and that all Defendants

18  conspired to deny the decedent equal protection of the laws.  *See generally*,

19  Complaint, at pp. 11-33.  In addition to these federal claims, Plaintiff Daniels

20  asserted the state-law claims of assault and battery, wrongful death, and

21  personal injury against the Defendants.  *Id.* at 33-37. On April 12, 2004,

22  Plaintiff Stephanie McDonough (Daniels' mother) brought a separate action

23

24  _____

25  [1]Neither Plaintiffs' Opposition nor the witness' testimony indicate whether the witness is referring to the bean bag rounds or the live ammunition rounds.

26  [2]This action is called a *Monell* claim after the Supreme Court decision in which the Court

27  held that an entity, such as a city or county, is not liable under Section 1983 unless a municipal policy caused the constitutional deprivation. *See Monell v. New York Dept. of Social Services*, 436

28  U.S. 658 (1978).

<center>3</center>

1  against Defendants on similar grounds.  On June 28, 2004, the Court ordered

2  the two actions consolidated.

3      On January 14, 2005, Defendants filed the instant Motion for

4  Summary Judgment on three principal grounds: 1) Camou did not violate

5  Daniels' constitutional rights; 2) Camou is entitled to qualified immunity;

6  and 3) Defendant County of Ventura is entitled to judgment as a matter of

7  law on Plaintiffs' *Monell* claim.

8                    **III. Summary Judgment Standard**

9      Summary judgment is appropriate if there is no genuine issue of

10 material fact and the moving party is entitled to judgment as a matter of law.

11 Fed.R.Civ.P.56(c).  The moving party bears the initial responsibility of

12 informing the court of the basis of its motion, and identifying those portions

13 of "'pleadings, depositions, answers to interrogatories, and admissions on

14 file, together with the affidavits, if any,' which it believes demonstrate the

15 absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

16 317, 323 (1986)(quoting Fed.R.Civ.P. 56(c)). "If the moving party meets its

17 initial burden of showing 'the absence of material and triable issue of fact,'

18 'the burden then moves to the opposing party, who must present significant

19 probative evidence tending to support its claim or defense.'" *Intel Corp. v.

20 Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting

21 *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)). The non-

22 moving party must go beyond the pleadings and designate facts showing an

23 issue for trial. *Celotex*, 477 U.S. at 322-23.

24      The substantive law governing a claim determines whether a fact is

25 material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

26 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue

27 of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co.

28 v. Zenith Radio*, 475 U.S. 574, 578 (1986). The court should view inferences

1   drawn from the facts in the light most favorable to the non-moving party.

2   *T.W. Elec. Serv.*, 809 F.2d at 630-31.

3        If the factual context makes the non-moving party's claim as to the

4   existence of a material issue of fact implausible, that party must come

5   forward with more persuasive evidence to support his claim than would

6   otherwise be necessary. *Id.*; *In re Agricultural Research and Tech. Group*, 916

7   F.2d 528, 534 (9th Cir. 1990); *California Architectural Bldg. Prod., Inc. v.*

8   *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

9                                    **IV. Discussion**

10   **A.   Violation of Daniels' constitutional rights**

11        Defendants argue that the undisputed facts establish that Camou did

12   not violate Daniels' constitutional rights because Daniels posed a real threat

13   to the safety of the deputies and others. Defs.' mot, pp. 8-12. Defendants

14   contend Daniels was a threat because he was armed with a knife, he had

15   inflicted serious, potentially life-threatening wounds to his arm, and because

16   he did not respond to repeated attempts at communication or to pepper

17   spray. *Id.* at 9, 12. Defendants note that the use of deadly force to protect

18   citizens against an "armed and extremely dangerous" man has been deemed

19   "constitutionally reasonable." *Id.* at 9 (citing *O'Neal v. DeKalb County*, 850

20   F.2d 653 (11th Cir. 1988), which granted summary judgment and held that

21   officers did not use excessive force when they shot a hospital patient

22   brandishing a pocket knife). Accordingly, Defendants argue Camou's use of

23   lethal force was reasonable under the circumstances and did not violate

24   Daniels' Fourth Amendment Rights.

25        Plaintiffs argue that Daniels presented no immediate threat to the

26   safety of the deputies or others. Pls' opp., at pp. 10-12. They argue that

27   Daniels had committed no crime, and that there were alternative means of

28   detaining him without the use of lethal force. *Id.* at 9, 12. Plaintiffs argue

1    lethal force was excessive and unreasonable under the circumstances. *Id.* at 8

2    (citing *Tennessee v. Garner*, 471 U.S. 1 (1985), "The use of deadly force to

3    prevent the escape of all felony suspects, whatever the circumstances, is

4    constitutionally unreasonable. It is not better that all felony suspects die

5    than that they escape . . . .").

6          As support for the argument that Daniels was not a real threat,

7    Plaintiffs note that Daniels never verbally threatened any of the deputies,

8    nor did he wave or brandish the knife in a way that was threatening to them.

9    *Id.* at 10 (citing Responses of Vincent Camou to Pl's Requests for

10   Admissions, Responses 11-12, 14-15). Plaintiffs also provide evidence

11   indicating Daniels posed no threat to children or adults inside the public

12   swimming pool. *Id.* at 11. They note that the closest witness to the shooting

13   testified that seconds before the first volley of shots was fired, she observed

14   Daniels move away from the front entrance of the pool. *Id.* (citing

15   Deposition of Angela Bambrough, p. 36, ¶ 24-25; p. 37, ¶ 1-10; p. 41, ¶ 1-6).

16   The Supreme Court has held that deadly force may not be used unless the

17   officer has probable cause to believe that the suspect poses a "significant

18   threat" of death or serious bodily injury to the officers or others. *Tennessee*,

19   471 U.S. at 3. Plaintiffs' evidence of Daniels' behavior raises a triable issue of

20   fact as to whether it was reasonable for Camou to believe Daniels posed a real

21   threat.

22   **B.    Qualified Immunity**

23         Defendants argue that even if Camou's gunfire was not justified, he is

24   nevertheless protected from liability by qualified immunity.[3] Defs.' mot., at

25   p. 13. A police officer is immune from liability when he reasonably believes

26   _____

27         [3]The doctrine of qualified immunity insulates government agents against personal liability
for money damages for actions taken in good faith pursuant to their discretionary authority. *Harlow*

28   *v. Fitzgerald*, 457 U.S. 800 (1982).

1  his conduct is lawful. *Id.* at 14 (citing *Anderson v. Creighton*, 483 U.S. 635, 636

2  (1987)).  Defendants argue that the relevant question is whether a reasonable

3  officer could have believed the conduct was lawful, in light of clearly

4  established law and the information possessed by the officer. *Id.*  In civil

5  rights cases, the plaintiff has the burden of proving that a constitutional

6  right was violated, and that the right was so clearly established that a law

7  enforcement officer would be on notice that his conduct was unlawful.

8  *Saucier v. Katz*, 533 U.S. 194, 201-06 (2001); *Anderson*, 483 U.S. at 636-39;

9  *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996); *Brewster v. Board of*

10 *Education*, 149 F.3d 971, 977 (9th Cir. 1998).

11       As Plaintiffs correctly note, the Ninth Circuit has held that a victim's

12 constitutional rights may be established in the absence of a specific case

13 prohibiting the particular manifestation of unconstitutional conduct at issue.

14 Pls' opp., at p. 18 (citing *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir.

15 2004)).  In *Boyd*, the Court held that when an officer's conduct "is so patently

16 violative of the constitutional right that reasonable officials would know

17 without guidance from the courts that the action was unconstitutional,

18 closely analogous pre-existing case law is not required to show that the law is

19 clearly established." *Boyd*, 374 F.3d 781 (quoting *Hope v. Pelzer*, 536 U.S.

20 730, 739 (2002)).  The Court held further that, "[i]n excessive force cases, the

21 inquiry remains whether 'under the circumstances, a reasonable officer

22 would have had fair notice that the force employed was unlawful, and

23 [whether] a mistake to the contrary would have been unreasonable.'" *Id.* at

24 781 (quoting *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir.

25 2003)).

26       Plaintiffs argue that *Tennessee v. Garner* put Camou on notice that the

27 shooting of Daniels, under the facts and circumstances of this case, was

28 clearly unlawful, and that Camou had no objective reason to believe that

7

1  lethal force was necessary to detain Daniels.[4]  Pls' opp., at p. 19.  Plaintiffs

2  note that Deputy Kelly, who was near Deputy Camou at the time of the

3  shooting, did not have his weapon drawn.  *Id.*  Plaintiffs argue a jury could

4  infer from this that Deputy Kelly did not believe that lethal force was

5  reasonable.  *Id.*  A jury could subsequently infer that Camou acted

6  unreasonably.

7          If a jury found that Daniels was approaching children in a pool,

8  brandishing a knife, it could conclude that Daniels posed a significant threat

9  to the safety of those children.  Under those circumstances, Deputy Camou

10  would be entitled to qualified immunity.  If, on the other hand, a jury

11  concluded that Daniels had veered away from the entrance to the pool and

12  was not posing a threat to the children or the deputies, the clearly established

13  rule of *Tennessee v. Garner, supra*, would deprive Camou of qualified

14  immunity.  A triable issue of fact exists as to whether it was reasonable for

15  Camou to use lethal force to detain Daniels under the circumstances.

16  **C.   *Monell* Liability**

17          In the Complaint, Plaintiffs claim that the County of Ventura and the

18  Ventura County Sheriff's Department are liable for violating Daniels' right

19  to be free from unreasonable seizures and excessive force because the County

20  had in place policies, procedures, customs and practices which permitted and

21  encouraged police officers to unjustifiably and unreasonably use deadly force

22  against unarmed subjects.  Complaint, p. 19.  Liability against a

23  governmental entity under Section 1983 may not be imposed solely on the

24  basis of respondeat superior; however, liability may be imposed if an

25

26          [4]As noted above, in *Tennessee v. Garner*, the Supreme Court held that deadly force may not
27  be used unless it is necessary to prevent escape and the officer has probable cause to believe that the
    suspect poses a significant threat of death or serious physical injury to the officer or others.
28  *Tennessee*, 471 U.S. at 3.

1  individual's constitutional rights were violated based on a custom or policy

2  of the governmental entity. *Id.* (citing *Monell v. New York Dept. Of Social*

3  *Services*, 436 U.S. 658 (1978)).  Plaintiffs allege that it was the custom and

4  policy of the County of Ventura to, *inter alia*, cover up deputy misconduct

5  and to fail to adequately discipline officer misconduct or to take remedial

6  action for constitutional violations.  Complaint, at pp. 17-26.  Accordingly,

7  Plaintiffs claim the County is liable for damages under Section 1983.

8      Defendants argue that proof of a single incident of an allegedly

9  unconstitutional act cannot establish a policy or custom under *Monell*

10  sufficient to withstand summary judgment.  Defs.' mot., at pp. 22-24, cases

11  omitted.  Defendants note that the Supreme Court has held that in order to

12  make a claim of inadequate police training, a plaintiff is required to prove

13  that the training program was deficient and was deliberately indifferent to

14  the rights of the city's inhabitants.  *Id.* at 22-23 (citing *City of Canton v.*

15  *Harris*, 489 U.S. 378 (1989)).  Defendants claim that Plaintiffs have failed to

16  provide information from which a jury could infer a deliberate indifference

17  to Daniels' rights.  *Id.*  This Court disagrees.

18      The basis for Plaintiffs' *Monell* claim is two-fold: the County failed to

19  adequately train deputies in how to deal with mentally ill persons and the

20  County failed to discipline deputies who violated individuals' civil rights.

21  Pls' opp., at p. 22.  As support for the latter claim, Plaintiffs note that despite

22  inconsistencies in the statements of various witnesses as to the behavior of

23  Daniels in the moments before he was fatally shot, the Ventura County

24  Sheriff's Department's internal investigation of the shooting found that

25  Camou acted lawfully and within department policy.  *Id.*  No disciplinary

26  action of any kind was taken against Camou.  *Id.* (citing Responses of

27  Vincent Camou to Pls' Request for Admissions, Complaint, Ex. 3, Response

28  No. 35).  It is possible that a jury could infer from these facts that the County

9

1 | ratified Camou's action.  Furthermore, if Camou's gunfire was not
2 | constitutionally justified, a jury could infer that the County's absolution of
3 | Camou evidences a practice or custom of allowing violations of civil rights.
4 | The County of Ventura and the Ventura County Sheriff's Department are
5 | not entitled to summary judgment, because triable issues of fact exist as to
6 | the County's failure to properly discipline deputies for incidents such as the
7 | one involving Daniels.

### V. Conclusion

9 |     For the reasons set forth above, the Court **denies** Defendants' Motion
10 | for Summary Judgment (docket # 22).

12 | February 25, 2005

_____
FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT